UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

| | |
|---|---|
| ALLIANCE COAL, LLC, | ) |
|     Plaintiff/Counterclaim Defendant, | ) |
| v. | ) |
| LARRY SMITH, | ) No. 0:26-CV-10-REW-EBA |
|     Defendant/Counterclaim Plaintiff/<br>    Cross-Claim Defendant, | ) OPINION & ORDER |
| and | ) |
| DUSTY L. McCOY, | ) |
|     Defendant/Cross-Claim Plaintiff/<br>    Counterclaim Defendant. | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

There are two separate motions to dismiss in this interpleader case. First, Ms. McCoy moves to dismiss Mr. Smith's counterclaims. *See* DE 18. Although none of the counterclaims name her directly, Ms. McCoy argues that her motion is proper because the counterclaims implicate her rights and go to the central issue of the action. *See id.* at 2–6. Second, Alliance Coal moves to dismiss Mr. Smith's counterclaims. *See* DE 20. Alliance Coal asserts that Mr. Smith failed to adequately state a claim for breach of fiduciary duty in Counterclaim I, II, or III, *see* DE 20-1 at 8–13, and failed to adequately state a claim under ERISA § 502(a)(1)(B) in Counterclaim IV, *see id.* at 13–14. Both motions are fully briefed.

The Court concludes that dismissal is warranted on account of Alliance Coal's motion alone. Accordingly, the Court GRANTS DE 20, DENIES DE 18 as moot, and DISMISSES Mr. Smith's counterclaims with prejudice.

I.     BACKGROUND

In March 2025, Plaintiff/Counterclaim Defendant Alliance Coal, LLC ("Alliance Coal") initiated the present action. *See* DE 1; DE 6. The operative complaint (DE 6) alleges that Constance Smith ("Ms. Smith") was a long-time employee at Excel Mining, LLC ("Excel Mining"), a wholly owned subsidiary of Alliance Coal.[1] *See* DE 6 ¶¶ 7–8, at 3. While working at Excel Mining, Ms. Smith enrolled in a participant-directed 401(k) retirement plan governed by fixed terms, *see* DE 14-1, and the Employee Retirement Income Security Act ("ERISA") of 1974, Pub. L. No. 93–406, 88 Stat. 829 (codified as amended at 29 U.S.C. § 1001 *et seq.*). *See* DE 6 ¶¶ 9–10, at 3. The retirement plan assets are held and managed by INTRUST Bank, N.A. ("INTRUST Bank"), an appointed trustee. *See id.* ¶ 11, at 3. However, the plan administrator nominates a committee to administer the plan. *See* DE 14-1 at 41. The trustee is solely responsible "for holding the assets of the plan," *see id.*, and although the trustee is unambiguously a fiduciary, the terms of the plan do not suggest that the trustee is the plan administrator's agent in any capacity, *see id.* at 42 ("This [p]lan is intended to allocate to each named fiduciary the individual responsibility for the prudent execution of the functions assigned to it, and none of such responsibilities . . . shall be shared by two or more of such named fiduciaries unless such sharing is provided for by a specific provision . . . .").

Because Ms. Smith was unmarried and without children, she filed a beneficiary designation form on December 6, 2007. *See id.* ¶¶ 12–13, at 3–4. Specifically, Ms. Smith identified Defendant/Cross-Claim Plaintiff/Counterclaim Defendant Dusty L. McCoy ("Ms. McCoy") as the primary beneficiary of her retirement plan. *See id.* ¶ 13, at 3–4. Two years later, Ms. Smith

---

[1] Larry Smith disputes this claim, asserting that Excel Mining is actually a wholly owned subsidiary of Alliance Resources Partners, L.P. *See* DE 12 ¶ 8, at 3. This disputed fact does not meaningfully alter the Court's analysis.

2

confirmed, or received confirmatory notice of, Ms. McCoy's status as her primary beneficiary in a separate form. *See id.* Ms. McCoy—Ms. Smith's second cousin—asserts that she and Ms. Smith had the functional equivalent of a mother-daughter relationship, with Ms. Smith raising her as her own child. *See* DE 14 ¶ 30, at 12. On December 10, 2024, Ms. Smith passed away. *See* DE 6 ¶ 14, at 4. At the time of her death, Ms. Smith's vested interest in the retirement plan was $965,616.86. *See id.* ¶ 15, at 4. Ms. McCoy was promptly mailed notice from INTRUST Bank informing her that she was entitled to the accrued benefits as Ms. Smith's primary beneficiary. *See id.* ¶ 16, at 4.

Enter Ms. Smith's brother, Defendant/Counterclaim Plaintiff/Cross-Claim Defendant Larry Smith ("Mr. Smith"). Two weeks after INTRUST Bank mailed notice to Ms. McCoy, Mr. Smith contacted INTRUST Bank.[2] *See id.* ¶ 17, at 4. In his communication, Mr. Smith included a beneficiary designation form dated February 21, 2024. *See id.* Mr. Smith alleges that his sister executed the form prior to her death, designating him as the sole beneficiary of the retirement plan. *See* DE 12 ¶ 7, at 9. However, Larry Smith claims that Constance failed to file the form due to various misrepresentations that were made to her by INTRUST Bank representatives. *See id.* ¶ 9, at 9. Soon after receiving that 2025 communication, INTRUST Bank informed Ms. McCoy. *See* DE 6 ¶ 18, at 4. Ms. McCoy protested the validity of Mr. Smith's form, *see id.* ¶ 19, at 4, and Alliance Coal has, for now, withheld payment of all benefits accrued under the retirement plan, *see id.* ¶ 20, at 5.

Being without sufficient information to determine the validity of Ms. McCoy and Mr. Smith's competing claims, and fearing multiple exposure, Alliance Coal filed the instant interpleader action. *See id.* ¶ 21, at 5. Alliance Coal makes no claim to the plan benefits. *See id.*

---

[2] Technically, Mr. Smith's daughter—Jill Smith—contacted INTRUST Bank. *See* DE 6 ¶ 17, at 4. However, she claims to have done so in a representative capacity.

3

¶ 21, at 5.  Rather, it simply requests the Court to make a determination so as to avoid double liability.  *See id.* ¶ 23, at 5.  The parties do not dispute that the interpleader action is legitimate, and they do not dispute that the Court's jurisdiction is proper.  *See generally* DE 12; DE 14.

After Alliance Coal served the operative complaint, Mr. Smith filed an answer including two affirmative defenses, *see* DE 12 at 5–8, and a number of counterclaims, *see id.* at 8–15.  Mr. Smith asserts that two INTRUST Bank representatives incorrectly informed his sister that she did not need to file an updated beneficiary designation form because she had not designated a beneficiary.  *See id.* ¶ 7, at 9.  Further, those same representatives allegedly told Ms. Smith that any plan benefits would pass to Mr. Smith through probate.[3]  *See id.* ¶¶ 8–10, at 9.  Mr. Smith now brings the following counterclaims against Alliance Coal, INTRUST Bank, and Ms. McCoy: (1) breach of fiduciary duty under ERISA § 502(a)(2) and § 502(a)(3), *see id.* ¶¶ 11–15, at 9–10; (2) equitable estoppel under ERISA § 502(a)(3), *see id.* ¶¶ 16–21, at 10–12; (3) reformation of plan documents under ERISA § 502(a)(3), *see id.* ¶¶ 22–27, at 12–13; and (4) breach of plan requirements under ERISA § 502(a)(1)(B), *see id.* ¶¶ 28–33, at 13–14.

The first three counterclaims arise out of the INTRUST Bank representatives' alleged factual misrepresentations and resulting breach of fiduciary duty, while the fourth counterclaim is premised on Alliance Coal's failure to honor Ms. Smith's "true intent" with respect to the distribution of her plan benefits.  Although the pleading identifies Ms. McCoy and INTRUST Bank as counterclaim defendants in the caption, *see id.* at 1, Mr. Smith makes no allegations of

---

[3] If true, that was doubly wrong.  Ms. McCoy was designated by Constance Smith as the plan's primary beneficiary, *see* DE 6 ¶ 13, at 3–4, and state probate laws do not govern ERISA plan distributions, *see Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 129 S. Ct. 865, 877 (2009) (noting that Congress intended for ERISA distributions to occur "simply by identifying the beneficiary specified by the plan documents" (quoting *Egelhoff v. Egelhoff ex rel. Breiner*, 121 S. Ct. 1322, 1328 (2001))).  While the benefits of an ERISA-covered plan can conceivably pass through probate, that possibility depends on the specific language of the plan itself.  Here, in the absence of a designation, an "estate" is the last-level taker.

4

misconduct against Ms. McCoy, and Mr. Smith has not secured joinder of (or issuance of process or service as to) the absent INTRUST Bank. The counterclaim has been filed for over eight months. *See* DE 12 at 15.

Ms. McCoy has also filed an answer to the operative complaint that includes a number of affirmative defenses, *see* DE 14 at 1–7, along with various cross-claims against Mr. Smith, *see id.* at 7–23. Generally, Ms. McCoy alleges that she is entitled to Ms. Smith's plan benefits as the designated beneficiary. *See id.* ¶¶ 52–63, at 15–16. To the extent Mr. Smith argues otherwise, Ms. McCoy asserts that the change of beneficiary form produced after Ms. Smith's death was not properly executed and is invalid for various reasons. *See generally id.* ¶¶ 64–106, at 17–22.

Before the Court are two separate motions to dismiss. First, Ms. McCoy's motion. *See* DE 18. She seeks to dismiss Mr. Smith's counterclaims, alleging that his requested relief would irreparably harm her rights, and that his counterclaims implicate the central issue of the action. *See id.* at 2–6. Specifically, Ms. McCoy asserts that: (1) Mr. Smith's breach of fiduciary duty argument fails as a matter of law, *see id.* at 6–14; (2) Mr. Smith has not adequately pleaded the elements of equitable estoppel, *see id.* at 15–16; (3) Mr. Smith's requested reformation remedy is inappropriate, *see id.* at 16–22; and (4) Mr. Smith's breach of plan requirements contention is both duplicative and non-meritorious, *see id.* at 22. Mr. Smith responded to the motion, *see* DE 21, and Ms. McCoy filed a reply, *see* DE 23.

Second, Alliance Coal's motion. *See* DE 20. Alliance Coal also seeks to dismiss Mr. Smith's counterclaims, asserting that: (1) he failed to adequately state a claim for breach of fiduciary duty in Counterclaim I, II, or III, *see* DE 20-1 at 8–13; and (2) failed to adequately state a claim for a breach of plan requirements under ERISA § 502(a)(1)(B) in Counterclaim IV, *see id.* at 13–14. Alliance Coal further argues that INTRUST Bank is not properly before the Court, and

5

to the extent that Mr. Smith's counterclaims target INTRUST Bank, they should be dismissed. *See id.* at 15. The company also contends that Mr. Smith is not entitled to a surcharge remedy, *see id.* at 15–16, or a jury trial, *see id.* at 17, on any of his counterclaims. Mr. Smith responded to the motion, *see* DE 22, and Alliance Coal filed a reply, *see* DE 26. In her separate reply, Ms. McCoy incorporated and adopted Alliance Coal's arguments as her own. *See* DE 23 at 2 n.1. Both motions are fully briefed and ripe for the Court's decision.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

A party may, by motion, seek dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6); *see also id.* at 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Crucially, when evaluating a Rule 12(b)(6) motion, the Court is required to "accept all the [non-moving party's] factual allegations as true and construe the [pleading] in the light most favorable to the [non-moving party]." *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005).

In order "[t]o survive a motion to dismiss, a [pleading] must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)). If the non-moving party's pleading does not do so, or if the non-moving party is barred from recovering on their claims as a matter of law, then dismissal is warranted. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 127 S. Ct. at 1969). While the non-moving party's pleading need not include detailed factual allegations, it needs to include something "more than labels and conclusions." *Southfield Educ. Ass'n v.*

6

*Southfield Bd. of Educ.*, 570 F. App'x 485, 487–88 (6th Cir. 2014) (quoting *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012)). And although the pleading's well-pleaded factual allegations should be assumed true, they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *Bredesen*, 500 F.3d at 527 (quoting *Twombly*, 127 S. Ct. at 1965).

### B. The Employee Retirement Income Security Act

ERISA creates multiple causes of action for participants, beneficiaries, and fiduciaries to initiate civil suits as a vehicle to obtain appropriate relief. *See* ERISA § 502(a), 88 Stat. at 891 (codified as amended at 29 U.S.C. § 1132(a)). Three of these causes of action are particularly relevant to the present matter.

First, a participant or beneficiary may sue "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Id.* § 502(a)(1)(B), 88 Stat. at 891 (codified as amended at 29 U.S.C. § 1132(a)(1)(B)). Section 502(a)(1)(B) relief is only accorded for violation of a plan's particular terms. *See Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 839 (6th Cir. 2007). To the extent that a litigant seeks to remedy "other breaches of other sorts of fiduciary obligations," he should invoke § 502(a)(3). *See id.*; *see also Varity Corp. v. Howe*, 116 S. Ct. 1065, 1077 (1996).

Second, a participant, beneficiary, or fiduciary may sue "for appropriate relief under section 409." ERISA § 502(a)(2), 88 Stat. at 891 (codified as amended at 29 U.S.C. § 1132(a)(2)). Importantly, that named section specifies that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries . . . shall be personally liable to make good to such plan any losses to the plan." *Id.* § 409(a), 88 Stat.

7

at 886 (codified at 29 U.S.C. § 1109(a)). The U.S. Supreme Court has explicitly recognized—in accordance with this language—that § 502(a)(2) is not intended to serve as a vehicle for individualized relief. *See LaRue v. DeWolff, Boberg & Assocs., Inc.*, 128 S. Ct. 1020, 1024–26 (2008). Rather, it allows for actions to be brought on behalf of and to benefit the plan.[4] *See id.*

Third, a participant, beneficiary, or fiduciary may sue "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this title." ERISA § 502(a)(3), 88 Stat. at 891 (codified as amended at 29 U.S.C. § 1132(a)(3)). To be certain, the Supreme Court has curtailed the kinds of relief available under this provision on multiple occasions. *See Sereboff v. Mid Atl. Med. Servs., Inc.*, 126 S. Ct. 1869, 1874 (2006) ("While Mid Atlantic's case for characterizing its relief as equitable thus does not falter because of the nature of the recovery it seeks, Mid Atlantic must still establish that the basis for its claim is equitable."); *Great-West Life & Annuity Ins. Co. v. Knudson*, 122 S. Ct. 708, 714 (2002) (noting that "not all relief falling under the rubric of restitution is available in equity"); *Mertens v. Hewitt Assocs.*, 113 S. Ct. 2063, 2068–70 (1993) (determining that § 502(a)(3) does not authorize suits for money damages against non-fiduciaries, even when they knowingly participated in a fiduciary's breach of fiduciary duty). But generally, "§ 502(a)(3) 'functions as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy.'" *Rochow v. Life Ins. Co. of North America*, 780 F.3d 364, 371 (6th Cir. 2015) (en banc) (quoting *Varity Corp.*, 116 S. Ct. at 1078).

---

[4] This is not to say that § 502(a)(2) only authorizes derivative actions and never permits individual suits. While "§ 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *LaRue*, 128 S. Ct. at 1026.

8

### III. ANALYSIS

Alliance Coal's motion—which is properly before the Court—reveals that all four of Mr. Smith's counterclaims lack merit. Accordingly, dismissal is warranted without regard to Ms. McCoy's separate motion.

#### A. The Court Denies Ms. McCoy's Motion as Moot

The Court ultimately grants Alliance Coal's motion. As a result, Ms. McCoy's motion may be denied as moot. Before proceeding, however, the Court notes two procedural concerns with respect to Ms. McCoy. First, Ms. McCoy is correct in asserting that she was improperly identified as a counterclaim defendant. *See* DE 18 at 3. Because she is Mr. Smith's co-defendant in the interpleader action, Ms. McCoy should have been styled a cross-claim defendant. *See* FED. R. CIV. P. 13(g). But that inaccuracy alone will not result in dismissal. *See, e.g.*, *Various Markets, Inc. v. Chase Manhattan Bank, N.A.*, 908 F. Supp. 459, 471 (E.D. Mich. 1995) (citing *F.D.I.C. v. Bathgate*, 27 F.3d 850, 873–74 (3d Cir. 1994)) ("[S]o long as at least one party against whom a counterclaim/third-party claim is asserted was a party to the original action, counterclaims may be asserted against additional third parties . . . . The foregoing makes clear that, although perhaps unartfully captioned, Chase's 'third-party' claims comply with the Federal Rules of Civil Procedure."); *see also Carter v. Ford Motor Co.*, 561 F.3d 562, 566 (6th Cir. 2009) ("A court must construe pleadings . . . 'liberally in order to prevent errors in draftsmanship from barring justice to litigants.'" (quoting *Ritchie v. United Mine Workers of Am.*, 410 F.2d 827, 833 (6th Cir. 1969))).

Second, and more foundationally, Alliance Coal and INTRUST Bank, not Ms. McCoy, are the targets of the substance of Mr. Smith's counterclaims. *See* DE 12 ¶¶ 11–33, at 9–14. And although Ms. McCoy is included in the pleading's caption, "[t]he caption is not regarded as containing any part of [the] claim." *Blanchard v. Terry & Wright, Inc.*, 331 F.2d 467, 469 (6th

Cir. 1964). Patently, Mr. Smith, making no allegations against her, failed to state a claim against Ms. McCoy, a fact that would necessarily require her dismissal as a purported counterclaim defendant. *See, e.g.*, *Evans v. McDonald*, No. 25-11574, 2025 WL 2714114, at *2 (E.D. Mich. Sept. 23, 2025) (citing *Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002)) ("Where a person is named as a defendant without an allegation of specific misconduct, the complaint is subject to dismissal . . . ."). Of course, the Court need not delve further into this inquiry. Because the Court grants Alliance Coal's motion, Ms. McCoy's motion—seeking identical relief—is denied as moot.

### B. The Court Grants Alliance Coal's Motion

#### 1. Breach of Fiduciary Duty—ERISA § 502(a)(2) and § 502(a)(3)

In Counterclaim I, Mr. Smith asserts that INTRUST Bank—as the plan trustee—owed a fiduciary duty to act with "care, skill, prudence, and diligence . . . and solely in the interests of [the plan] participants and beneficiaries." DE 12 ¶ 12, at 10. When INTRUST Bank's representatives provided Ms. Smith with incorrect information, Mr. Smith claims that duty was breached. *See id.* ¶ 13, at 10. Accordingly, Mr. Smith requests the Court to designate him as the primary beneficiary and/or award a surcharge for losses caused by the breach. *See id.* ¶ 15, at 10. It is unclear whether Counterclaim I targets only INTRUST Bank, Alliance Coal, or both, and it appears to overlap in significant part with Counterclaims II and III.

As a preliminary matter, Mr. Smith cannot obtain individual relief under § 502(a)(2). Mr. Smith does not allege that INTRUST Bank or Alliance Coal caused any sort of plan injury; rather, he contends that they damaged his individual right to recover Ms. Smith's plan benefits. *See id.* ¶¶ 11–15, at 9–10. This type of action is not cognizable under § 502(a)(2). *See LaRue*, 128 S. Ct. at 1026; *Mass. Mut. Life Ins. Co. v. Russell*, 105 S. Ct. 3085, 3089 (1985) ("There can

10

be no disagreement with the Court of Appeals' conclusion that § 502(a)(2) authorizes a beneficiary to bring an action against a fiduciary who has violated § 409. Petitioner contends, however, that recovery for a violation of § 409 inures to the benefit of the plan as a whole. We find this contention supported by the text of § 409 . . . ."). Because Mr. Smith seeks individual relief, and not relief that would benefit the plan in its entirety, he cannot proceed under § 502(a)(2).

With respect to his request for relief under § 502(a)(3), Mr. Smith fails to state a plausible claim upon which relief may be granted. In order to adequately plead a claim for breach of fiduciary duty under § 502(a)(3), a claimant must allege facts establishing that "(1) the defendant, while acting in a fiduciary capacity, (2) made a material misrepresentation, (3) that the [claimant] relied on." *Briggs v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 774 F. App'x 942, 947 (6th Cir. 2019) (citing *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 433 (6th Cir. 2006)). Notably, a misrepresentation is only "material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision." *Id.* (quoting *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002)).

Here, Mr. Smith does not allege that Alliance Coal, the lone active defendant, made *any* misrepresentation. Rather, he avers that two INTRUST Bank representatives erroneously informed Ms. Smith that she did not need to designate Mr. Smith as the primary beneficiary of her plan benefits. *See* DE 12 ¶¶ 7–8, at 9. Mr. Smith does not make any effort to explain, with fortifying law, how these purported misrepresentations are attributable to Alliance Coal.[5] *See Vest v. Resolute FP US Inc.*, 905 F.3d 985, 988–89 (6th Cir. 2018) ("Here, plaintiff does not

---

[5] In his response, Mr. Smith briefly suggests that Alliance Coal has unjustly enriched itself by improperly holding and retaining plan proceeds until the resolution of the present action. *See* DE 22 at 10–11. But that is simply not a plausible basis for relief. Alliance Coal has initiated a proper interpleader action and there is no suggestion that it has failed to follow necessary procedures with respect to the disputed funds. *See* FED. R. CIV. P. 22; *see also* 28 U.S.C. § 1335. Alliance Coal reasonably wants to pay but once.

contend her breach of fiduciary duty claim rests on a request to [the defendant]. In the district court's words, plaintiff's complaint lacks specific allegations concerning communications between the [plaintiffs] and [the defendant]"). And although INTRUST Bank is named in the caption of the pleading, *see* DE 12 at 1, Mr. Smith has not served INTRUST Bank[6] or stated a valid claim against a present party to which a counterclaim against INTRUST Bank could attach.[7] *See DNA Health, LLC v. Liv Health LLC*, No. 5:22-CV-121, 2023 WL 2110882, at *2 (E.D. Ky. Feb. 17, 2023) ("[A] counterclaim cannot be directed only against a person who is not already a party to the original suit. . . . To join a new party under Rule 13(h), a counterclaim must involve at least one existing party. . . . Otherwise, neither the counterclaim nor the new party will be added to the action." (internal citations omitted)). Therefore, Counterclaim I is dismissed in its entirety.

---

[6] Rule 13(h) allows for joinder of parties with reference to Rules 19 and 20, and courts do not typically require a motion to effect joinder of a proper counterclaim. *See* FED. R. CIV. P. 13(h); *see also Lindsey v. Udezo*, No. 1:15-CV-1117, 2015 WL 7681253, at *3 (W.D. Tenn. Nov. 24, 2015) ("Although K & S is a new party, Rule 13(h) allows the addition of a new party as long as Rule 20 is satisfied. . . . As the Estate properly joined Defendant pursuant to Rule 20, it has complied with Rule 13(h)." (internal citation omitted)). That said, service still is a requirement. *See, e.g.*, *Mas, Inc. v. Nocheck, LLC*, No. 10-CV-13147, 2011 WL 13217828, at *1–2 (E.D. Mich. May 25, 2011) (dismissing a counterclaim defendant on account of the counterclaim plaintiff's failure to effect timely service of process under Rule 4(m)); *Flexpand, LLC v. CREAM, Inc.*, No. 19-0878, 2020 WL 13505087, at *1 (N.D. Cal. Sept. 1, 2020) (same). And Mr. Smith has taken no steps to secure or serve process, now far beyond the borrowed Rule 4(m) deadline. *See* DE 12 at 15. Additionally, Mr. Smith's posture indicates an effort to sue only Alliance Coal based on allegedly imputed acts of INTRUST Bank. *See* DE 22 at 9–10. That fails for the reasons articulated here, and INTRUST Bank itself is obviously not before the Court to answer any claims or make any defenses.

[7] Mr. Smith also argues in his response that the actions of INTRUST Bank and its representatives—as the trustee for the plan—are attributable to Alliance Coal. *See* DE 22 at 9–10. As such, INTRUST Bank is not needed to proceed in the litigation, and Alliance Coal may be held liable without regard to INTRUST Bank. Of course, this argument does not explain why INTRUST Bank was identified in the caption of the pleading at all. *See* DE 12 at 1. More crucially, it does nothing to alter Mr. Smith's unambiguous failure to make this argument in his pleading. *See Iqbal*, 129 S. Ct. at 1949 ("To survive a motion to dismiss, a [pleading] must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp.*, 127 S. Ct. at 1974))). Mr. Smith did not allege or argue agency in the counterclaim, and he does nothing in the briefing to fortify that theory, which would contravene the terms of the plan. Indeed, the plan itself makes clear that INTRUST Bank, as trustee, is only responsible for holding plan assets. *See* DE 14-1 at 41. Further, the plan emphasizes that each fiduciary is allocated individual responsibilities, and unless stated otherwise, the fiduciaries do not act jointly. *See id.* at 42. As a result, nothing in the plan itself suggests the kind of agency relationship that Mr. Smith implies here, and this point ultimately justifies the dismissal of Mr. Smith's counterclaims with prejudice.

### 2. Equitable Estoppel—ERISA § 502(a)(3)

In Counterclaim II, Mr. Smith asserts another breach of fiduciary duty claim premised on the INTRUST Bank representatives' alleged misrepresentations. *See* DE 12 ¶ 17, at 10. More specifically, Mr. Smith seeks equitable estoppel based on INTRUST Bank's failure to satisfy its putative duty to provide accurate information. *See id.* ¶¶ 18–20, at 10–12. He ultimately requests the Court to "direct[] payment of the [plan] benefits to [him], the intended beneficiary of Constance Smith's 401(k) account at death." *See id.* ¶ 21, at 12. As with Counterclaim I, it remains unclear whether Counterclaim II is asserted against INTRUST Bank, Alliance Coal, or both. Only Alliance Coal is at the table.

Again, Mr. Smith fails to state a claim upon which relief may be granted. To prevail on an equitable estoppel claim under § 502(a)(3), a claimant must plead the elements of an underlying breach of fiduciary duty along with "an element of fraud, either intended deception or such gross negligence as to amount to constructive fraud." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 553 (6th Cir. 2012) (quoting *Bloemker v. Laborers' Loc. 265 Pension Fund*, 605 F.3d 436, 443 (6th Cir. 2010)). But as with Counterclaim I, Mr. Smith does not allege any misrepresentation or fraud by Alliance Coal, nor does he explain how the INTRUST Bank representatives' purported misrepresentations could be attributed to Alliance Coal. *See* DE 12 ¶¶ 17–21, at 10–12. And because INTRUST Bank is not presently before the Court, Mr. Smith's allegations do not supply a viable basis to proceed. As such, Counterclaim II is dismissed in its entirety.

### 3. Reformation of Plan Documents—ERISA § 502(a)(3)

In Counterclaim III, Mr. Smith asserts a third and final breach of fiduciary duty claim premised on the same alleged misrepresentations. *See id.* ¶ 23, at 12. He requests reformation of the plan documents "to name [him] as the beneficiary, as plainly intended" by Ms. Smith. *See id.*

13

¶¶ 24–25, at 12. Yet again, it is unclear whether Counterclaim III is asserted against INTRUST Bank, Alliance Coal, or both.

And yet again, Mr. Smith fails to state a claim upon which relief may be granted. To succeed on a reformation of plan documents claim under § 502(a)(3), a claimant must plead the elements of an underlying breach of fiduciary duty while also alleging "a mistaken belief . . . caused by fraud or inequitable conduct by the other party." *Briggs*, 774 F. App'x at 947 (citing *Pearce v. Chrysler Grp., LLC Pension Plan*, 893 F.3d 339, 347–49 (6th Cir. 2018)). In what is now a familiar refrain, Mr. Smith does not allege that Alliance Coal committed misconduct, does not explain how statements made by INTRUST Bank's representatives are attributable to Alliance Coal, and has failed to properly join INTRUST Bank to the action. As a result, Counterclaim III is dismissed in its entirety.

### 4. Breach of Plan Requirements—ERISA § 502(a)(1)(B)

In Counterclaim IV, Mr. Smith raises a breach of plan requirements claim under § 502(a)(1)(B). *See* DE 12 ¶¶ 29–30, at 13–14. He alleges that "[t]he [p]lan/[t]rustee failed to correctly and clearly identify [the] named beneficiaries" of Ms. Smith's plan, thereby violating various and unidentified terms that require accurate and complete communication. *See id.* ¶¶ 31–33, at 14. Unlike Counterclaims I, II, and III—all of which are premised on an alleged breach of fiduciary duty—Counterclaim IV is premised on an alleged violation of the plan's terms.

But like with the other counterclaims, Mr. Smith fails to state a claim upon which relief may be granted in Counterclaim IV. To succeed under § 502(a)(1)(B), Mr. Smith must assert that he was denied benefits to which he was entitled under the plan's terms.[8] *See Shaw v. AT&T*

---

[8] To be clear, a participant or beneficiary may sue "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." ERISA § 502(a)(1)(B), 88 Stat. at 891 (codified as amended at 29 U.S.C.

14

*Umbrella Benefit Plan No. 1*, 795 F.3d 538, 546 (6th Cir. 2015) (citing 29 U.S.C. § 1132(a)(1)(B)). Here, Mr. Smith does not identify a plan provision entitling him to the disputed benefits. *See* DE 12 ¶¶ 28–33, at 13–14. Rather, he argues that he *should* be entitled to the disputed benefits on account of Ms. Smith's intent and the communications history. *See id.* He fails to highlight any plan provision that Alliance Coal itself has broken, and his non-specific plan-based claims regarding the missing INTRUST do not keep the counterclaim alive.[9] *See id.* Given those facts, Counterclaim IV is dismissed in its entirety.

\* \* \*

Before concluding, the Court considers three final matters that apply generally across most or all of the counterclaims: (1) whether Mr. Smith can seek a surcharge remedy; (2) whether Mr. Smith is entitled to a jury trial; and (3) whether Mr. Smith's counterclaims should be dismissed with or without prejudice.

First, Mr. Smith cannot seek a surcharge remedy on any of his counterclaims. When deciding § 502(a)(3) claims, the Court is limited to granting appropriate equitable relief, meaning remedies that "were *typically* available in equity." *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1878 (2011) (emphasis in original) (quoting *Sereboff*, 126 S. Ct. at 1870). While the *Cigna* Court suggested in dicta that surcharges may fall into this category, *see id.* at 1880, the Sixth Circuit has squarely rejected that notion, *see Helfrich v. PNC Bank, Ky., Inc.*, 267 F.3d 477, 480–82 (6th Cir. 2001). In *Aldridge v. Regions Bank*, 144 F.4th 828, 849 (6th Cir. 2025), the court went so far as to state that "courts may not grant a monetary award under § [502(a)(3)] to compensate a plan

---

§ 1132(a)(1)(B)). But with respect to Counterclaim IV, Mr. Smith only appears to be seeking benefits due to him under the terms of the plan. *See* DE 12 ¶¶ 28–33, at 13–14.

[9] Again, to the extent that Mr. Smith intends to hold Alliance Coal responsible for the conduct of INTRUST Bank's representatives, he must, but did not, make that theory in his pleading.

participant for losses caused by a fiduciary." *Id.* Thus, until either the Sixth Circuit or the Supreme Court holds otherwise, Mr. Smith cannot obtain a surcharge remedy under § 502(a)(3).

Second, Mr. Smith would not be entitled to a jury trial on any of the counterclaims. The Sixth Circuit has consistently determined that "[p]laintiffs seeking relief under ERISA generally have no right to have their claims decided by a jury." *Jammal v. Am. Family Ins. Co.*, 914 F.3d 449, 452 n.1 (6th Cir. 2019) (citing *Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 616 (6th Cir. 1998); *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 882–83 (6th Cir. 1997); *Bair v. Gen. Motors Corp.*, 895 F.2d 1094, 1096–97 (6th Cir. 1990)). Consistent with that rule, the court has affirmed denials of jury demands in § 502 civil enforcement actions. *See, e.g.*, *Bair*, 895 F.2d at 1096 ("Although there may be actions under ERISA in which a jury trial is proper, in actions for recovery of benefits under section 502 [29 U.S.C. § 1132], there is no right to a jury trial." (alteration in original) (internal quotation marks omitted) (quoting *Daniel v. Eaton Corp.*, 839 F.2d 263, 268 (6th Cir. 1988))). Mr. Smith only brings § 502 claims, all of which are fundamentally claims for benefits that "are analogous to an action to enforce a trust and hence clearly equitable in nature." *Bittinger*, 123 F.3d at 883. Under explicit Sixth Circuit authority, he thus has no right to demand a jury trial.

Third, all of Mr. Smith's counterclaims are dismissed with prejudice. Generally, "[a] "dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a judgment on the merits, and is therefore done with prejudice." *Pratt v. Ventas, Inc.*, 365 F.3d 514, 522 (6th Cir. 2004) (internal quotation marks omitted) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 101 S. Ct. 2424, 2428 n.3 (1981)). As evidenced by the preceding analysis, Mr. Smith cannot state a claim upon which relief can be granted against either Ms. McCoy or Alliance Coal. And per the precise terms of the plan, neither Ms. McCoy nor Alliance Coal may be held liable for statements

16

made by INTRUST Bank's representatives.[10] *See* DE 14-1 at 41–42. The Court will not, of course, rule on the merits of Mr. Smith's claims against any other parties not presently before the Court. However, the Court once again highlights Mr. Smith's own suggestion that he did not intend to raise a claim against INTRUST Bank. *See* DE 22 at 9–10. In sum, the Court dismisses each of Mr. Smith's counterclaims with prejudice.

IV. CONCLUSION

For the above-stated reasons, the Court ORDERS as follows:

1. The Court GRANTS DE 20, and DISMISSES Counterclaims I, II, III, and IV, with prejudice.

2. The Court DENIES DE 18 as moot.

This the 9th day of February, 2026.



Signed By:
Robert E. Wier
United States District Judge

---

[10] And even if Mr. Smith could link those statements to Alliance Coal, his claims would face an arduous path. The extant documents named Ms. McCoy as the primary beneficiary, and the plan outlined a specific procedure for naming a new beneficiary via submission of a beneficiary designation form. *See* DE 20-1 at 12; DE 14-1 at 64. Concerningly for Mr. Smith, the Sixth Circuit has previously found that "a participant's reliance on a representation regarding the plan can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents." *Cataldo*, 676 F.3d at 554 (internal quotation marks omitted) (quoting *Bloemker*, 605 F.3d at 443). Moreover, Mr. Smith's claim that he and his sister were misled as to whether they needed to submit a beneficiary designation form is difficult to square with the existence of the beneficiary designation form allegedly signed on February 21, 2024. *See* DE 6 ¶ 17, at 4.

17